# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ROBERT NEVINS,

Plaintiff,

-vs-                                                    Case No.  6:04-cv-1486-Orl-DAB

JO ANNE B. BARNHART,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

Defendant.

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of Defendant's denial of Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

### PROCEDURAL HISTORY

On June 3, 2002, Plaintiff protectively filed an application for a period of Disability Insurance Benefits and Supplemental Security Income (R. 207). These applications were denied initially and upon reconsideration. A request for hearing was timely made and a hearing before an administrative law judge (herein "the ALJ") was held on December 3, 2003 (R. 238-68). The ALJ issued an unfavorable decision on April 20, 2004, finding Plaintiff not disabled (R. 13-26). Plaintiff requested review from the Appeals Council, but the request was denied (R. 6-8), leaving the ALJ's decision as the final decision of the Commissioner. This action timely followed.

### NATURE OF DISABILITY CLAIM

Plaintiff claims disability based on "surgery on right foot and right shoulder," a hearing problem, and "lower back problems" (R. 45). Plaintiff amended his date of alleged onset of disability to August 7, 1999 (R. 39-40).

*Summary of Evidence Before the ALJ*

Plaintiff was 48 years old at the time the decision issued (R. 40, 208), with a high school education and past relevant work experience as a driver (R. 46, 51).

The medical evidence is set forth in the ALJ's decision. By way of summary, Plaintiff was seen at the hospital on August 7, 1999, due to a sprained neck as a result of a traffic accident. An MRI revealed mild degenerative change with anterior osteophytes at C3-4. (R. 119). The diagnosis was cervical strain (R. 122).

Plaintiff was referred to orthopedic surgeon Armand Zilioli, M.D., on September 27, 1999 (R. 128), and presented with complaints of neck and back pain. It was noted that Plaintiff used a cane to get in and out of the chair. Examination of the back revealed a mild sway back deformity secondary to pain. Full extension of the neck produced pain. The impression was acute cervical strain with mild intermittent right arm pain, early degenerative changes in the cervical spine at C3-4 and C5-6, status post anterior acromioplasty of the right shoulder and acute low back strain, grade 1 spondylolisthesis (R. 127-8). Dr. Zilioli opined that Plaintiff was probably capable of doing some light work activity, but he needed low back support (R. 127). Muscle relaxers and pain medications were prescribed, and Plaintiff was referred to physical therapy.

On October 21, 1999, Plaintiff returned to Dr. Zilioli (R. 127). The doctor opined that Plaintiff was well enough to return to his work activities, but indicated that he would have continued back pain episodes due to his recent injury superimposed on spondylolisthesis. It was felt that his symptoms

may worsen with time and may lead to him having to give up his work activities (R. 127).  Plaintiff was assessed with a permanent physical impairment of 2% for chronic back pain, superimposed on a 5% pre-existing impairment for the spondylolisthesis.

Plaintiff returned on November 29, 1999 for a follow up visit (R. 127).  He reported that simple work activities around the house aggravated his injury.  The doctor noted he could expect to have intermittent episodes of back pain secondary to spondylolisthesis.  Dr. Zilioli placed Plaintiff on weight lifting of no more than 25 pounds, and noted that it might be better if Plaintiff were relocated to some other position which did not require repetitive bending, stooping and lifting (R. 126).

Plaintiff returned on January 17, 2000, continuing to complain of intermittent back pain (R. 126).

Plaintiff presented to Richard Smith, M.D., on August 15, 2000 (R. 140), reporting constant pain of varying severity and dizziness.  On examination, there was tenderness on palpation of the paraspinal muscles and sciatic notch bilaterally. Muscle strength was 4/5 and forward flexion was limited to 60 degrees, extension to 5 degrees and right and left lateral flexion to 10 degrees. Plaintiff ambulated with a normal gait.  Straight leg raise was negative and tactile sensation was within normal limits.  Plaintiff was able to accomplish heel and toe standing (R. 139).  Multiple views of the lumbar spine showed a grade I spondylolisthesis at L5 and S1 (R. 138).  The diagnosis was back pain, spondylolisthesis, and sciatica.  Treatment options included: do nothing, "and have the patient live with the pain," continued conservative treatment, or possible surgical intervention (R. 138). Dr. Smith restricted Plaintiff to no repetitive bending and ordered an MRI scan.

An MRI was performed on August 24, 2000 (R. 130).  The impression was severe degenerative disc disease at L5-S1 with grade I spondylolisthesis and modic type end plate changes. In addition, there was broad based disc bulge into the anterior epidural space.  There was mild proximal foraminal stenosis secondary to the broad based bulge, with no definite focal disc herniation or central canal stenosis. There was also a mild bulge at L4-5 with small central disc herniation identified into the ventral epidural space.

Plaintiff returned to Dr. Smith on September 12, 2000 (R. 136).  Examination findings were the same, and, after reviewing the MRI, Dr. Smith felt that Plaintiff was a candidate for surgery. Prescriptions for pain medications were renewed, and Plaintiff was referred to physical therapy.

Plaintiff was seen at Florida Center for Orthopaedic Rehabilitation from October 18 through October 29, 2000 (R. 131).  It was indicated he had good days and bad days, but subjectively he felt he had improved 70%. Objectively, he had decreased range of motion with pain and problems with bending, lifting and prolonged standing activities. *Id.*

Plaintiff returned to Dr. Smith for follow-up on October 24, 2000, continuing to complain of back and leg pain (R. 135).  On examination, his gait was antalgic, there was tenderness on palpitation of the paraspinal muscles, with spasm, range of motion was limited, he had difficulty toe or heel walking, and straight leg raise was positive bilaterally (R. 135).

Dr. Smith saw Plaintiff again on December 5, 2000 (R. 134), for continued complaints of back and leg pain.  He ambulated with a slightly antalgic gait, range of motion was limited and there was tenderness on palpation of the paraspinal muscles, but Plaintiff was able to accomplish toe and heel standing, and there was no weakness noted to hip, knee, or ankle flexion or extension.  He was

released to return to work with restrictions of no lifting over 25 pounds, no repetitive bending or truncal twisting (R. 134).  Dr. Smith assessed an impairment of 8% (R. 133).

The file reveals no medical records for the time period of December 6, 2000, through September 22, 2002 (R. 19).

Alex Perdomo, M.D., saw Plaintiff for a consultative examination on September 23, 2002 (R. 145-46).   Plaintiff's chief complaint was right shoulder, right foot and low back pain.   On examination, range of motion of the upper extremities was limited to 100 degrees bilaterally due to radiating pain into the lower back.  The thoracolumbar spine was slightly decreased with forward flexion to 70 degrees, extension 5 degrees, lateral flexion and rotation 20 degrees both right and left. Neurological examination was normal, as was grip strength and fine manipulation, and Plaintiff was noted to have full range of motion of the lower extremities.  The impression was history of chronic low back pain with musculoskeletal limitations, degenerative disc disease of the lumbar spine with spondylolisthesis, history of chronic right shoulder pain with musculoskeletal functional limitations on physical examination, history of chronic right foot pain from foot crushing injury and decreased hearing by history.  Noting the lack of recent x-rays or MRI's, Dr. Perdomo opined that Plaintiff could perform well in light duty work, but should avoid standing for more than four hours a day, repetitive bending or lifting over ten to fifteen pounds, and overhead lifting, especially with the right arm (R. 146).

On October 15, 2002, Plaintiff underwent audiometric testing for his hearing difficulties (R. 156-157).  Evaluation revealed moderate sensorineural hearing loss with good speech understanding for conversational speech at elevated level. The examiner opined that Plaintiff should do reasonably well with hearing aid to hear conversational speech (R. 157).

A Residual Functional Capacity Assessment was completed by a state agency physician on October 28, 2002 (R. 148-155).  It was felt that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; could stand and/or walk for six hours; sit for about six hours; was unlimited in the ability to push or pull; and could occasionally stoop and crouch.  He was limited in frequent right overhead reaching, hearing and was to avoid concentrated exposure to vibration (R. 151-52).

On November 20, 2002, Plaintiff was seen at the Apopka Family Clinic, for low back pain, right knee pain and right shoulder pain (R. 169).  Apopka Family notes from December 4, 2002, indicated Plaintiff's cholesterol medication caused mouth blisters.  He indicated he still had chronic pain as well. (R. 168).  He returned with chronic low back pain and right knee pain on February 5, 2003 (R. 166).

An X-ray of the lumbar spine on February 24, 2003, indicated Plaintiff had anterolisthesis of L5 on S1 with disc space narrowing at this level.  X-rays of the right knee showed no radiographic abnormalities (R. 181).

On March 3, 2003, Plaintiff was seen for complaints of shoulder pain (R. 179).  Examination showed tenderness to palpitation.

A Residual Functional Capacity Assessment was completed by a state agency physician on March 22, 2003 (R. 158-65).  The examiner found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand/walk for six hours; could sit for six hours; and was unlimited in the ability to push or pull (R. 159).  Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl.  He could never climb ladders, ropes and scaffolds (R. 160).  He was limited in right overhead reaching to occasional and was to avoid concentrated exposure to hazards (R. 162).

On May 12, 2003, Plaintiff complained of high pitched tinnitus greater on the right than left (R. 175). Testing indicated that Plaintiff had moderate sensorineural hearing loss. Word discrimination on the right and left was poor (R. 174). He had considerable difficulty understanding conversational speech (R. 175).

Records from Orlando Regional on August 22, 2003, indicated Plaintiff had a stress thallium myocardial perfusion scan. He had a borderline normal LV function with LV ejection fraction of 44%. (R. 185).

Johnson Massey, M.D., from Cardiovascular Associates, examined Plaintiff on November 17, 2003, for complaints of chest pain (R. 196). There was no evidence of myocardial ischemia. Plaintiff complained of shortness of breath. The impression was atypical chest pain, normal nuclear stress test, possible LV dysfunction, shortness of breath and hypertension (R. 196).

Plaintiff was seen at Apopka Family Clinic on December 9, 2003, complaining of back pain, and was issued a prescription for a cane (R. 201).

An echocardiogram was performed on January 1, 2004, and showed normal left ventricular ejection fraction (R. 197).

Plaintiff appeared and testified at his hearing about his pain and limitations. He noted that he needed to use his cane due to fatigue (R. 248). He testified that he needs hearing aids but has no money to buy them (R. 251). Plaintiff stated that he walks around the yard, can sit for 20 minutes without pain, can stand for about five minutes, and can lift 15 to 20 pounds occasionally.

A vocational expert ("VE") also appeared and testified at the hearing. The ALJ asked the VE to assume an individual of Plaintiff's age, education, and work experience who had limitations as set forth in the state agency's physical residual functional capacity assessment: he could lift 20 pounds

occasionally and 10 pounds frequently; sit, stand, or walk for six hours of an eight-hour day; could occasionally climb, balance, stoop, kneel, crouch, or crawl, but could never climb ladders, ropes or scaffolds; he was limited to occasional reaching overhead with his right arm; and he needed to avoid concentrated exposure to hazards such as machinery and concentrated exposure to noise (R. 259, 260). The VE testified that there were light jobs that Plaintiff could perform such as small products assembler (3,500 locally, 38,300 statewide), ticket taker (1,314 locally, 84,337 nationally), and fast food worker (20,500 locally, 601,000 nationally) (R. 259).

In response to a second hypothetical question that assumed Plaintiff had limitations as assessed in Exhibit 12F (no standing for more than four hours; no repetitive bending or lifting more than 10 to 15 pounds; no overhead lifting especially with right arm; avoid concentrated exposure to noise; occasionally climb, balance, stoop, kneel, crouch, or crawl, but never climb ladders, ropes, or scaffolds; is to avoid concentrated exposure to hazards such as machinery, and has difficulty hearing) (see R. 146), the VE testified that Plaintiff could still perform the job as a small products assembler (R. 260-61).

In a third hypothetical question, the ALJ asked the VE to assume that based on Exhibit 11F (see Dr. Smith's limitations at R. 134), Plaintiff could do no lifting over 25 pounds; no repetitive bending or trunk twisting; he needed to avoid concentrated exposure to noise, but he could hear if you spoke loudly (R. 261). The VE responded that Plaintiff could perform the previously cited jobs (R. 261).

In the administrative decision, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine with spondylolisthesis at L5-S1, right acromioclavicular joint arthritis status post right rotator cuff repair, sensorineural hearing loss since childhood and status post tarsal

-8-

tunnel release following a crush injury to the right hindfoot, which were severe impairments (R. 21). Plaintiff was found to have the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about six hours total in an 8 hour workday, and sit for about six hours. Plaintiff was found to have certain non-exertional limitations regarding postural activities and overhead reaching and is precluded from jobs which require exposure to hazards and noise. Plaintiff was found to have difficulty hearing, but can understand conversation at an elevated level (R. 23). He was found unable to perform his past relevant work (R. 26, Finding 7); but, relying on the testimony of the VE, the ALJ concluded that the Plaintiff was not under a disability, as defined under the Social Security Act, at any time through the date of the decision. 20 C.F.R. §§ 404.1520(g) and 416.920(g)) (R. 24-26).

### THE STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

Plaintiff sets forth three grounds for review: 1) substantial weight was not given to the testimony of the examining physician; 2) the hypothetical posed to the VE was incomplete; and 3) Plaintiff's subjective complaints of pain were not properly evaluated. Each is treated, in turn.

### Weight given to Opinions

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.) The conclusions from a physician based on a one-time examination are not entitled to the weight given to opinions from treating physicians. *See*

-10-

*Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986).  A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff's treating physicians were principally Drs. Smith and Zilioli.  In his decision, the ALJ adopted the opinions of the non-examining state agency physicians, noting that they were not inconsistent with the opinions of the treating physicians, and rejected the opinions expressed by the consultative examiner, Dr. Perdomo, as being inconsistent with the treating physicians' opinions and inconsistent with his own examination notes (R. 23).[1]  Plaintiff contends that this was error in that Dr. Perdomo's opinions were supported by earlier treating physician note that Plaintiff's condition could worsen over time.  The argument is not persuasive.

As set forth above, the ALJ was entitled to give greater weight to the opinions of the treating physicians, neither of which found Plaintiff to have any limitations on his ability to stand.  Moreover, as noted by the ALJ, Dr. Perdomo's opinion was not only inconsistent with that of the state agency physicians and the treating physicians, but was internally inconsistent, as well.  On examination, Dr. Perdomo reported that Plaintiff had full range of motion in the lower extremities, a normal gait, and only mild musculoskeletal functional limitations (R. 145-146).  The ALJ's conclusion to adopt the state agency opinions, which were consistent with the opinions of the treating physicians,  is supported by substantial evidence.

Plaintiff also contends that Plaintiff's physicians found a profound hearing impairment that was ignored by the ALJ (Brief at 7).  The record belies this contention.  The ALJ noted Plaintiff's

---

[1]Dr. Perdomo opined that Plaintiff could perform light duty work, avoiding standing for more than four hours a day, repetitive bending, or lifting over ten to fifteen pounds, and should avoid overhead lifting with his right arm, especially (R. 146).

allegations of hearing difficulties, and the medical evidence relating to this problem, throughout the decision. *See* R. 16 (noting "hearing problems"); R. 17 ("significant sensorineural hearing loss with use of hearing aids since 1997"); R. 19 ("history of bilateral decreased hearing since childhood" and "hearing appropriate to normal conversation with no evidence of hearing aids in place"); R. 20 ("decreased hearing by history" and a discussion of the results of the audiogram performed on October 15, 2002, as well as Plaintiff's May 12, 2003 doctor visit "for complaints of gradual hearing loss"); R. 21 (finding "a sensorineural hearing loss since childhood"); R. 22 (Plaintiff's testimony regarding his need for hearing aids): *see also* R. 22, 23, 25 (weighing the evidence of Plaintiff's hearing impairment and making findings regarding same). The ALJ specifically found that Plaintiff has some difficulty hearing, but can understand conversation at an elevated level. As set forth above, this conclusion is adequately supported by the record evidence.

### Hypothetical Questions

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Plaintiff contends that the hypothetical posed to the VE was inaccurate, apparently because it did not include the limitations on hearing found by Plaintiff's doctors, or Plaintiff's use of a cane. To the contrary, the record reflects that the hearing limitation was noted in a hypothetical presented to the VE (R. 260-261). The VE testified that even with the hearing limitation, Plaintiff could perform

certain specified jobs.  Moreover, the VE was questioned on cross-examination regarding the effect of Plaintiff's use of a cane (R. 264-265) and noted that the use of a cane would have no effect on Plaintiff's ability to perform small products assembly work, while seated (R. 264).  Thus, the record reflects that the questioning of the VE was not incomplete.

**Pain Standard**

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Here, Plaintiff asserts that the ALJ erred in evaluating his complaints because "Plaintiff in this case has provided uncontradicted evidence of an underlying medical condition accompanied by objective medical evidence confirming the severity of the alleged pain and limitations." Brief at 11.

Specifically, Plaintiff notes that the ALJ found Plaintiff suffered from degenerative disc disease of the lumbar spine with spondylolisthesis at L5-S1, right acromioclavicular joint arthritis status post right rotator cuff repair, sensorineural hearing loss since childhood and status post tarsal tunnel release following a crush injury to the right foot (R. 21), and argues that these conditions provide a basis for the pain and limitations alleged.

The mere existence of a medical condition does not, in itself, establish disability. It is the functional limitations of that medical condition that is at issue. Here, neither of Plaintiff's treating orthopaedic physicians found him to be disabled, and, in fact, both found him capable of light work. For that matter, as pointed out by the ALJ, Plaintiff went for a long period of time without *any* treatment for these conditions, which certainly mitigates against a finding of severity.[2] Thus, while record evidence does establish the existence of an objective medical condition, Plaintiff has failed to point out objective medical evidence confirming the severity of the conditions.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the

---

[2]Plaintiff contends that the ALJ erred in relying on Plaintiff's lack of treatment in that Plaintiff testified at the hearing that he was having financial difficulty. Brief at 12, referencing R. 251. Plaintiff's reference is misleading. At hearing, Plaintiff stated: "I don't have the money to get hearing aids." This is far from an assertion that Plaintiff was not financially able to see a physician for two years. Indeed, prior to the hearing, Plaintiff had established himself as a patient at the county clinic and had secured a settlement on his worker's compensation claim. There is no showing that Plaintiff's hiatus from the health care system was due to finances.

testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ noted several reasons for discrediting the allegations of severe limitations, including Plaintiff's lack of treatment for two years, lack of hospitalizations, lack of weight loss or atrophy, and the findings of only mild functional limitations and improvement with physical therapy. These findings are well-supported in the record.  Further, the ALJ discussed at length the evidence regarding the severity of the hearing impairment.  Although Plaintiff contends that the fact that he has had the hearing loss since childhood (as pointed out by the ALJ) is irrelevant, the Court disagrees. Even though Plaintiff has had a lifelong hearing impairment, Plaintiff was able to perform work as a driver for years.  The ALJ further noted Plaintiff's independence in daily activities, which included driving, shopping, walking around the yard and weeding.  Plaintiff asserts that participation in everyday activities does not disqualify a claimant from disability.  *Lewis v. Callahan,* 125 F.3d 1436 (11th Cir. 1997).  While true, the ALJ did not rely solely on Plaintiff's daily activities in making her credibility determination, but properly considered all of the evidence of Plaintiff's functionality.

### CONCLUSION

Although different inferences can be made from the record evidence, it is not this Court's task to reweigh the evidence or substitute its judgment for that of the ALJ.  Rather, the sole issue before the Court is whether the decision of the ALJ was made in accordance with proper legal standards and is supported by substantial evidence.  Here, the Court finds that the ALJ's determination meets that standard.  As such, it is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and to close the file.

-15-

**DONE** and **ORDERED** in Orlando, Florida on September 26, 2005.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record